UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

| | |
|---|---|
| JIMMY WILSON, | Case No. 15 CV 6326 |
| Plaintiff, | (RRM) (RLM) |
| | |
| -against- | **AMENDED COMPLAINT** |
| | |
| THE CITY OF NEW YORK, DETECTIVE | JURY DEMAND |
| THOMAS LODICO [SHIELD # 455], | |
| SERGEANT KIERAN FOX [SHIELD # | |
| 1008], UC # 92, UC # 32, DETECTIVE | |
| WALTER MARIN, DETECTIVE | |
| VINCENT BARESE, DETECTIVE | |
| KHAN, DETECTIVE SANTANA, | |
| DETECTIVE SPATARO, DETECTIVE | |
| PRENDERGAST, P.O. QUINTO | |
| and JOHN DOE AND JANE DOE (the | |
| names John and Jane Doe being fictitious, | |
| as the true names are presently unknown), | |
| Defendants. | |

---------------------------------------------------------------X

Plaintiff, JIMMY WILSON, by his attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, Detective Thomas Lodico [Shield # 455], Sergeant Kieran Fox [Shield # 1008], UC # 92, UC # 32, Detective Walter Marin, Detective Vincent Barese, Detective Khan, Detective Santana, Detective Spataro, Detective Prendergast, P.O. Quinto and John Doe and Jane Doe (collectively, "defendants"), respectfully alleges as follows:

<u>NATURE OF THE ACTION</u>

1.      This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983, [and arising under the law and statutes of the City and State of New York].

<u>JURISDICTION</u>

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

<u>THE PARTIES</u>

4.      Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

5.      Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.

6.      The City of New York Police Department ("NYPD") is an agency of defendant City, and all officers referred to herein were at all times relevant to this complaint employees and agents of defendant City.

7.      Defendant Detective Thomas Lodico [Shield # 455] was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

8.      Defendant Sergeant Kieran Fox [Shield # 1008] was at all times material herein a sergeant employed by the NYPD. He is named here in his official and individual capacities.

9.      Defendant UC # 92 was at all times material herein an undercover police officer employed by the NYPD. UC # 92 is named here in his/her official and individual capacities.

10.     Defendant UC # 32 was at all times material herein an undercover police officer employed by the NYPD. UC # 32 is named here in his/her official and individual capacities.

11.     Defendant Detective Walter Marin was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

12.      Defendant Detective Vincent Barese was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

13.      Defendant Detective Khan was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

14.      Defendant Detective Santana was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

15.      Defendant Detective Spataro was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

16.      Defendant Detective Prendergast was at all times material herein a detective employed by the NYPD. He is named here in his official and individual capacities.

17.      Defendant P.O. Quinto was at all times material herein a police officer employed by the NYPD. He is named here in his official and individual capacities.

18.      Defendants John Doe and Jane Doe were at all times material herein individuals and/or officers employed by the NYPD. They are named here in their official and individual capacities.

19.      Defendants Lodico, Fox, UC # 92, UC # 32, Marin, Barese, Khan, Santana, Spataro, Prendergast, Quinto and Does are collectively referred to herein as "defendant officers".

20.      At all times material to this Complaint, the defendant officers acted toward plaintiff under color of the statutes, ordinances, customs, and usage of the State and City of New York.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

21.      On or about August 4, 2015, at approximately 5:30 p.m., defendant officers, acting in concert, arrested plaintiff without cause at or within the vicinity of

222 Malcolm X Boulevard, Brooklyn, New York, and charged plaintiff with PL 220.39(1) 'Criminal sale of a controlled substance in the third degree'.

22. Plaintiff, however, did not sell any controlled substance and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

23. Prior to his arrest, plaintiff and his friends, Cymantha Springs and BJ, were sitting in front of a restaurant or corner store relaxing, when all of a sudden they were bum-rushed by defendant officers.

24. Defendant officers then subjected the plaintiff to an illegal and warrantless search with defendant officers pushing, shoving, kicking and grabbing the plaintiff.

25. Defendant officers proceeded to remove approximately $210.00 belonging to the plaintiff which the plaintiff had with him at the time.

26. Defendant officers did not issue or provide the plaintiff with any voucher specifying the properties seized from him with the constitutionally-required notice printed on the voucher describing how plaintiff could reclaim his seized properties.

27. Defendant officers did not otherwise notify the plaintiff of any procedure he could follow to reclaim his seized properties including but not limited to the aforesaid $210.00.

28. Even though defendant officers did not find any contraband on the plaintiff, defendant officers nonetheless tightly handcuffed the plaintiff with his hands placed behind his back.

29. Defendant officers also handcuffed approximately two other individuals at the scene.

30. Plaintiff complained that the handcuffs were too tight and were cutting into his skin causing him to experience pain and numbness in his arms.

31. Defendant officers refused plaintiff's entreaties to remove or loosen the handcuffs.

32. Following the tight handcuffing, defendant officers further subjected the plaintiff to an illegal and warrantless search.

4

33.     Defendant officers still did not recover any contraband from their illegal search of the plaintiff.

34.     Nonetheless, defendant officers forcibly pushed the plaintiff into their police vehicle.

35.     Upon information and belief, defendant officers released the other individuals who were also handcuffed at the location of the arrest.

36.     Plaintiff was detained in the police vehicle for several hours.

37.     During the lengthy period of time that the plaintiff was detained in said police vehicle, defendant officers were merely driving around from one place to the other.

38.     Eventually, defendant officers transported plaintiff to the NYPD-81st Precinct.

39.     While at the precinct, defendant officers further subjected the plaintiff to strip/body cavity searches.

40.     Defendant officers still did not recover any contraband from their illegal and warrantless search of the plaintiff.

41.     After detaining the plaintiff for a lengthy period of time at NYPD-81st Precinct, plaintiff was transported to the Central Booking to await arraignment.

42.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

43.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiff engaged in the sale of a controlled substance.

44.     Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against the plaintiff.

45.     The prosecutors subsequently conducted an independent investigation and concluded that there was no evidence of any crime committed by the plaintiff.

46.     As a result, the prosecutors declined to prosecute the plaintiff.

47.     On or about August 5, 2015, after detaining the plaintiff for a lengthy period of time, defendant officers summarily released the plaintiff from his unlawful detention.

48.     Defendant officers however seized and/or appropriated to themselves several of plaintiff's items or properties, including but not limited to the aforesaid $210.00, and have refused to return aforesaid properties to plaintiff.

49.     That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

50.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

51.     As a result of the aforesaid actions by the defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983 - against defendant officers

52.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 51 of this complaint as though fully set forth herein.

53.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, failure to intervene, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, racial profiling, unlawful taking of private property, abuse of authority, pattern of harassment, conspiracy, discrimination, selective enforcement, fabrication of evidence, denial of right to familial association, denial of equal protection of the laws and denial of due process rights.

54.     Such conduct violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

55.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

56.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 55 of this complaint as though fully set forth herein.

57.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

58.     Defendant City of New York, acting through aforesaid NYPD, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

59.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

60.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and

that it had settled at least one of the lawsuits brought against it concerning racial profiling.

61.	In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in unlawful stop and frisk. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

62.	Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

63.	Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

64.	In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

65.	Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective

66.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

67.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

68.     Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

69.     Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

70.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that

71.     In addition to the instances of police misconduct described above, several officers of the NYPD – including, but not limited to, Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

72.     In addition to the named individual defendants, several officers of the NYPD assigned to NYPD-81st Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

73.     Most of the arrests and charges made by officers assigned to NYPD-81st Precincts are usually voided and/or dismissed by prosecutors for lack of evidence.

74.     Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to NYPD-81st Precincts concerning similar arrests and charges as those described herein. *See*, *e.g.*, *Anthony Gibson v. City of New York* (14 CV 282); *Anthony Holley v. City of New York* (12 CV 2410); *Diane Dawson v. City of New York* (10 CV 5768); *Khadija Shepherd v. City of New York* (10 CV 885); *Adrean Coombs v. City of New York* (08 CV 3447).

75.     Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and

employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

76.     The actions of defendants, acting under color of State law, deprived plaintiff of his due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in his person and property, to be free from abuse of process, the excessive use of force and the right to due process.

77.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12 - against defendants

78.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 77 of this complaint as though fully set forth herein.

79.     By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting him and depriving him of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

80.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

81.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

82.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FOURTH CAUSE OF ACTION: OTHER NEW YORK TORTS - against defendants

83.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 82 of this complaint as though fully set forth herein.

84.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, assault and battery, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, breach of special duty or relationship, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, unjust enrichment, negligent and intentional infliction of emotional distress and negligent hiring and retention of employment services.

85.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiff respectfully prays judgment as follows:

a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.     For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

d.     For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a

trial by jury.

Dated: Brooklyn, New York
      April 18, 2016

UGO UZOH, P.C.

/s/

_____

By:    Ugochukwu Uzoh (UU-9076)
      Attorney for the Plaintiff
      304 Livingston Street, Suite 2R
      Brooklyn, NY 11217
      Tel. No: (718) 874-6045
      Fax No: (718) 576-2685
      Email: u.ugochukwu@yahoo.com